MARVIN, Judge.
The defendant ex-wife appeals a 1981 judgment revoking $250 monthly permanent alimony awarded her in a 1977 divorce. CC Art. 160 authorizes revocation of permanent alimony, “if it becomes unnecessary.”
Defendant contends that the change of circumstances between 1977 and 1981 was not significant and substantial so as to warrant revocation, that the trial judge made arithmetical errors and failed to properly evaluate and compare the respective financial and physical conditions of the litigants. We view the testimony in the light most favorable to supporting the judgment and affirm.
The statute directs that the court “shall consider [the] . .. earning capability” of the spouse claiming alimony “in the light of all other circumstances.” See Sonfield v. Deluca, 385 So.2d 232 (La.1980); Ducote v. Ducote, 339 So.2d 835 (La.1976); Ward v. Ward, 339 So.2d 839 (La.1976), and Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973).
In 1977, defendant earned $11,350 as a nurse. More recently, she has been employed in a Grand Prairie, Texas, hospital, and earned $15,023 in 1979 and $17,580 in 1980.[1] In 1977 defendant had her two minor children living with her and contributed to their support. These children are now self-supporting and are living away from their mother. She vacationed in Colorado in 1979 and on a Caribbean cruise ship in 1980. She paid $900 for the cruise with money she obtained from a $700 rebate on the purchase of a new automobile partially on credit and from $200 in overtime work. She includes, however, $40 per month in her listing of expenses for vacation. She also includes $11 monthly medical insurance premiums on her adult child, Shannon, a monthly withdrawal of $25 to a bank plan to guarantee her checks, and $20 a month to a savings account.
Defendant lists these monthly living expenses:
Rent $240
Purchase or mortgage payments 321
(includes car payment of $234 and
payments to Sears, Wards, and VISA
for purchases including clothing)
Utilities 130
Food 165
Clothing (see purchases above) 15
Transportation 100
Medical & dental care 11
(we exclude $100 dental expense for Shannon Smith)
Insurance 193
Recreation 40
Other regular expenses, excluding $20
savings contribution but including professional magazine subscription, etc. 30
These items total $1,245,[2] which approximates the “average monthly take home pay” found by the trial court at $1,255. Defendant listed her net pay as $544 every two weeks ($544 X 26 or $14,144 from her gross earnings in 1980 of $17,580).[3] In any event, her net pay by her own calculations is reasonably approximate to her monthly expenses if some “expenses”, such as vacation expense and deductions made for savings accounts, are disallowed. See CC Art. 160, Bernhardt, supra.
Defendant has a savings account which at one time was $2,000, plus a small amount in an employee retirement program and her bank accounts. She owns Vz of the former family home which is rented to pay the mortgage payments, taxes, and insurance, and a resulting xh interest in the net from this rent from time to time. The house has an equity of about $60,000. Defendant regularly works 10 hours, 4 days a week, and *136 manages to work some overtime. She complains that she suffers from circulatory problems in her lower extremities, that she is “saddled” with the purchase of a new Pontiac, and that she is “straining” to make ends meet. We cannot say, however, that the trial court abused its discretion by concluding otherwise, even though it can be readily concluded this ex-husband has the ability to pay permanent alimony. See Loyacano v. Loyacano, 358 So.2d 304 (La.1978); Willis v. Willis, 355 So.2d 999 (La. App. 4th Cir. 1978), writ refused; Woods v. Woods, 338 So.2d 178 (La.App. 2d Cir. 1976).
Defendant does not have to be destitute to have permanent alimony restored in the event her earning capability later changes. Leavines v. Leavines, 224 So.2d 26 (La.App. 4th Cir. 1969). See also Shelton v. Shelton, 395 So.2d 899 (La.App. 2d Cir. 1981).
At appellant’s cost, judgment is affirmed.

.The ex-husband’s gross earnings showed similar increases to almost $30,000 in 1980 and we conclude that he has the ability to pay permanent alimony.

. Defendant claimed her monthly expenses totaled $1,308.

. Her payroll deductions were not otherwise specified.