700 So.2d 1077 (1997)
In re TUTORSHIP OF Jennifer Lynn BLANQUE.
Nos. 97-CA-249, 97-CA-250.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 1997.
*1078 Joseph C. Bartels, William A. Pigg, New Orleans, for Appellant David Blanque.
Terence L. Hauver, New Orleans, for Appellee Kathleen Dwyer.
Before GAUDIN, GRISBAUM and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, David Blanque, appeals from a judgment in favor of his severely disabled twenty year old daughter, Jennifer Lynn Blanque, which orders him to pay $600 per month in support and one-half of any uncovered medical expenses and attorney fees. For the reasons which follow, we reverse in part, as to attorney fees, and affirm the remainder of the judgment.
Jennifer, the daughter of Kathleen Dwyer and David Blanque, was born on March 27, 1977. In previous litigation between Jennifer's parents, it was clearly established that Jennifer is severely disabled. Blanque v. Blanque, 95-2012 (La.App. 4th Cir. 4/3/96), 671 So.2d 567. She is classified as multi-handicapped with moderate mental impairment, orthopedic handicaps and seizure disorder. She has a history of grand mal seizures and a diagnosis of multiple congenital anomalies. She has ocular myopia and multiple orthopedic problems, including congenital hip dislocation, recurrent clubbed feet in spite of surgical correction, bilateral knee *1079 dislocation on the left, shortening of the left femur and tibia, displacement of the patella and two inch leg length discrepancy. She also has microcephaly and congenital left facial paralysis. She functions at an age equivalent of about four years, one month. Blanque v. Blanque, supra. Jennifer's parents were divorced on December 23, 1982 and her mother was granted permanent custody. Jennifer's parents have been in court on numerous occasions over the amount of support which her father should pay for her. The last time resulted in a court order for him to continue support payments of $750 per month until Jennifer reaches age nineteen. Blanque v. Blanque, supra.
On February 23, 1995, Kathleen Dwyer instituted tutorship proceedings and secured an order confirming her as Jennifer's tutrix.[1] On April 16, 1996, Kathleen Dwyer, as Jennifer's tutrix, filed a Rule to Show Cause against David Blanque for further support for Jennifer. It was determined, based on previous rulings by the Fourth Circuit Court of Appeal, Blanque v. Blanque, supra, and the Supreme Court, Blanque v. Blanque, 96-1053 (La.5/3/96), 672 So.2d 697, that any support to Jennifer, as a major, would be under La. C.C. art. 229, Reciprocal Alimentary Duties of Ascendants and Descendants, and not under the child support articles for minor children.[2]
On October 22, 1996, following trial, the district court ruled in favor of Jennifer and ordered David Blanque to pay $600 per month in her support and 50% of any uncovered medical bills. It also ordered him to pay $2,500 in attorney fees to Kathleen Dwyer on behalf of Jennifer. Judgment was signed on October 28, 1996. It is from this judgment that David Blanque now appeals.
On appeal David Blanque assigns three errors in the trial court ruling. First, he argues that under La. C.C. art. 229 he is only responsible for providing a major descendant with the necessities of life of food, clothing shelter and medical care, and then only if the descendant is found to be in need, that is, unable to obtain these necessities elsewhere. He argues that Jennifer is not "in need" since she has other means of obtaining these necessities. He contends that Jennifer is not in need of shelter because she lives with her mother in her mother's home. He further argues that she is not in need of the other necessities because she is entitled to Medicaid, for her medical care, and Social Security income (SSI), up to $470 per month, to cover any other necessities.
Next, David Blanque argues, in the alternative, that if it is determined that Jennifer is in need, then the amount awarded, $600 per month, is excessive. He argues that the total amount of Jennifer's monthly expenses is $1,069.79. Therefore, his one-half share would only be $535. Further, he argues that a number of the expenses allowed by the trial court, like transportation and entertainment, are not recoverable under La. C.C. art. 229. Thus, he argues, his share should be further reduced.
Finally, he argues that the trial judge erred in condemning him to pay attorney fees to Kathleen Dwyer. He argues that there is no legal authority for such an award. Therefore, absent statutory authority or agreement between the parties, attorney fees cannot be awarded.
*1080 Kathleen Dwyer argues, to the contrary, that she submitted a documented expense list establishing that the cost of Jennifer's monthly care is $2,501.70 and that the judgment against David Blanque, ordering him to pay $600 per month, does not nearly approach one-half of Jennifer's bills. She further disagrees with David Blanque's arguments regarding Jennifer's lack of need by pointing out that the parental responsibility to the child is primary and that federal aid through SSI is supplemental only. Finally, she argues that the award of attorney fees was proper because Jennifer is entitled to her father's support, which must include the cost of obtaining that support.[3]
The pertinent code articles applicable to this case, where the child is over nineteen years of age, are La. C.C. arts. 229  231. They state:
Art. 229. Reciprocal alimentary duties of ascendants and descendants
Children are bound to maintain their father and mother and other ascendants, who are in need, and the relatives in the direct ascending line are likewise bound to maintain their needy descendants, this obligation being reciprocal. This reciprocal obligation is limited to life's basic necessities of food, clothing, shelter, and health care, and arises only upon proof of inability to obtain these necessities by other means or from other sources.
Art. 230. Scope of alimentary obligation
A. By alimony we understand what is necessary for the nourishment, lodging, and support of the person who claims it.
B. It includes the education, when the person to whom the alimony is due is a minor, or when the person to whom alimony is due is a major who is a full-time student in good standing in a secondary school, has not attained the age of nineteen, and is dependent upon either parent.
Art. 231. Basis for granting alimony
Alimony shall be granted in proportion to the wants of the person requiring it, and the circumstances of those who are to pay it.
The reciprocal alimentary obligation provided in La. C.C. art. 229, between ascendants and descendants is different from the child support obligation of parents for their minor children. La. C.C. art. 227; La. R.S. 9:315 et seq. The obligation is not nearly as broad, applies only to those in need and encompasses only the basic necessities of food, clothing, shelter and health care. Banquer v. Banquer, 554 So.2d 790 (La.App. 5th Cir.1989). It generally does not include educational expenses or the other special expenses of a minor's rearing. Suire v. Miller, 363 So.2d 945 (La.App. 3rd Cir.1978). Further, the obligation only arises upon proof of the inability to obtain these necessities from other sources. Banquer v. Banquer, supra.
Based on these principles, David Blanque would have us read the statutes very narrowly, to include the most limited form of shelter, clothing, food and health care and not one single thing more. We disagree with this limited interpretation of the alimentary obligation that he owes his daughter.
First, it should be noted that La. C.C. art. 230, which defines the scope of the alimentary obligation includes "what is necessary for the nourishment, lodging and support of the person who claims it." Moreover, each case must be considered on its own facts. While a more restrictive reading of the statute might be given in a different case where the child in question was a more healthy, more self sufficient adult, the result reached in this case is mandated by the facts.
*1081 Jennifer is severely disabled. Thus, where the term clothing might mean just the articles themselves in another case, in this case she must additionally be provided the assistance to dress. While shelter in another case might mean simply a protected environment from the outdoors, in Jennifer's case the "shelter" or home in which she resides must be specially designed to fit her special orthopedic needs. Health care, as applied to this case because of Jennifer's mental disability must include activities that might not be included for a less disabled adult. We find the same to be true in all aspects of Jennifer's day to day activities. Jennifer's needs or necessities are far different from and greater than those of a less disabled person. Jennifer requires and deserves more time and expense.
David Blanque also argues that he should not be cast because Jennifer has other means or other sources from which to obtain her necessities. By this he is referring to federal aid. In other words, he is arguing that his obligation should commence after any aid Jennifer is "entitled" to from SSI. He argues that a disabled adult, in Jennifer's condition, is eligible to receive $470 per month in SSI benefits. Therefore, that amount should be deducted from Jennifer's needs before he is obligated to pay. We disagree and find that Jennifer's entitlement to $470 in SSI is not borne out by the record.
The expert in social security who testified did state that maximum SSI benefits are $470 per month. However, maximum benefits are only available to those individuals without any other assets. She further explained that if necessities were being provided in kind, or a means to obtain those necessities, this would be considered an asset and benefits would be reduced accordingly. In this case, Jennifer is being provided shelter by her mother, which would be considered an asset causing a reduction in her entitlement to benefits.[4] Further, it is not clear from this record that Jennifer's ability to obtain support from her parents could not also be considered an asset. We find no merit in David Blanque's argument that his obligation under La. C.C. art. 229 should come after whatever public assistance Jennifer might be able to collect.
Therefore, after reviewing the record, exhibits and arguments of counsel, we find that the trial court was correct in finding that Jennifer has adequately met her burden of establishing her need and entitlement to alimentary support under La. C.C. art. 229.
Next, David Blanque takes issue with the amount of support awarded, $600 per month. He contends that it is excessive. He argues that he should not contribute for housing since Jennifer is living with her mother. He further contends that the other expenses for food and clothing are well under the $600 per month which he was ordered to pay. He argues that he should not be responsible for any costs of transportation, social and school activities, community field trips or pictures. Finally, he argues that if all submitted expenses are considered they only total $1,069.79, and he is only responsible for 50% or $534.89. The trial court, after hearing the witnesses and the evidence presented, concluded that the amounts presented on behalf of Jennifer as her monthly expenses for food, clothing, shelter and health care, necessary to maintain a decent existence, were reasonable and her parents were equally responsible for them.
Jennifer's appointed attorney argued that the house in which she lives was designed to accommodate her special needs. The food and clothing expenses are not contested. The other expenses for transportation, activities and entertainment are also essential for a child with Jennifer's special problems. In *1082 fact, all these items were included in Jennifer's Individualized Transition Plan, promulgated by the Louisiana Department of Education, and considered critical for Jennifer's physical and mental health. We find, no error in the trial court determination that the reciprocal obligation of support, created by La. C.C. art. 229, in the context of this severely handicapped child, includes those expenses.[5]
Further, our calculations of Jennifer's expenses, since her father is no longer required to exercise his visitation during the summer and certain holidays and weekends, totals $1,158.22. We note that the expense sheet does not take into account Kathleen Dwyer's personal and extensive contribution to the health care and wellbeing of her daughter and the quality of life she is providing for Jennifer in the day to day and hour to hour things she does for Jennifer by caring for her in her home, taking her places, and being responsible for and making all the arrangements for all aspects of the child's life. Therefore, we find no error in the trial court determination that David Blanque's 50% share of Jennifer's expenses was $600 per month.[6]
Finally, David Blanque argues that the trial court erred in ordering him to pay attorney fees in the amount of $2,500. Attorney fees may not be awarded in the absence of a valid contractual agreement between the parties for the payment of fees or explicit statutory authority therefore. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (La.1970).
Kathleen Dwyer argues that, in the absence of legislation on the issue, the court should decide the case according to equity, resorting to justice, reason and prevailing usages. La. C.C. art. 4.
Despite the obvious equity in her argument, we find that legal authority does not support her position. It is the general rule that attorney fees are not allowed except where authorized by statute or contract. Maloney v. Oak Builders, Inc., supra. Even if the court were to analogize this case to similar cases, as she requests, we find that in child support cases, attorney fees are not awarded for bringing the action to set the support, but only to enforce the support judgment thereafter.
Therefore, we find that the trial court erred in ordering David Blanque to pay attorney fees of $2,500 and we reverse that part of the judgment.
Both parties have filed several motions in this court, moving to strike certain parts of their opponents' briefs and moving for sanctions. These motions were referred to the merits. They are hereby denied.
Accordingly, for the reasons stated above, the judgment of the trial court is reversed insofar as it ordered David Blanque to pay attorney fees of $2500. In all other respects the judgment is affirmed. Costs of appeal are assessed against David Blanque.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] David Blanque filed a Petition for Interdiction on November 29, 1995. On April 8, 1996, Kathleen Dwyer obtained an order placing Jennifer under continuing tutorship. The interdiction was consolidated with the instant case for trial. At trial, it was conceded that Kathleen Dwyer had the right to proceed herein on Jennifer's behalf, whether as tutrix or pursuant to the interdiction, and that ruling has not been contested on appeal.
[2] It appears from the transcript of these proceedings that the attorneys, as well as the lower court, were of the view that Jennifer was only entitled to support under La. C.C. art. 229 and not under La. C.C. art. 227 because, chronologically, she is over 19 years of age. Accordingly, the issue of Jennifer's entitlement to "child support" as a permanent child because of her mental disability was not presented to this court and we are bound by the Supreme Court ruling previously rendered in this case. However, we feel constrained to point out that, in our view, in a case such as this one, where the child will never reach a mental age of majority and will be in need of care, as a child, for the remainder of her life, her rights and needs to support from her parents could better be met under the child support articles, La. C.C. art. 227 and La. R.S. 9:315 et seq, than under La. C.C. art. 229.
[3] Kathleen Dwyer requests, in brief, that the child support sum set by the trial court be increased and that the attorney fees awarded be increased. However, she neither appealed nor answered the appeal. A judgment may not be amended or modified in a party's favor in the absence of an appeal or an answer to the appeal. La. C.C.P. art. 2133. The brief submitted by appellee does not satisfy the requirements of La. C.C.P. art. 2133 as it is neither an answer or an appeal. Arrow Fence Company, Inc. v. DeFrancesch, 466 So.2d 631 (La.App. 5th Cir.1985), writ denied, 468 So.2d 575 (La.1985). Therefore, because appellee failed to file an answer to the appeal or to perfect an appeal, we are precluded from addressing the issues raised solely in appellee's brief requesting modification of the judgment in her favor. Eubanks v. Hoffman, 96-0629 (La.App. 4th Cir. 12/11/96), 685 So.2d 597.
[4] David Blanque attempted to show that SSI benefits for Jennifer were only reduced because of Kathleen Dwyer's refusal to follow certain procedures. By this he is referring to her not entering into a contract with her daughter obligating Jennifer to pay rent. The problems with this idea are obvious. First, we note that since Kathleen Dwyer is Jennifer's tutrix, she would be contracting with herself, making the legality of any such contract questionable at best. Further, the expert testified that there must be an intent to establish separate households. Given Jennifer's lack of basic abilities, this would be simply impossible to show considering the reality of the situation. We find that the record does not support a showing that SSI benefits were reduced because of Kathleen Dwyer's unwillingness to follow procedures.
[5] Kathleen Dwyer persuasively argues that, in the case of a severely handicapped dependent child, like Jennifer, there is no difference in the child's needs created by the event of her chronological twentieth birthday. David Blanque had previously been ordered to pay $750 per month in child support.
[6] David Blanque was also ordered to pay 50% of Jennifer's uncovered medical expenses. He has not contested this part of the judgment. It is therefore affirmed.